JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
VICTORIA L. NEAL, ESQ.
Nevada Bar No.: 13382
KEMP & KEMP
7435 W. Azure Drive, Suite 110
Las Vegas, Nevada 89130
Ph. (702) 258-1183 / Fax (702) 258-6983
jp@kemp-attorneys.com
vneal@kemp-attorneys.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| WILLIAM SOTO,<br><br>Plaintiff,<br><br>vs.<br><br>ARIA RESORT & CASINO, LLC, a Domestic Limited Liability Company; MELANIE SALJOUGUI, an individual; YONG HOON LEE, an individual; JERALD HEDRICK, an individual; ROBERT FISHBOURNE; an individual; and, TODD OWEN, an individual;<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, WILLIAM SOTO, by and through Counsel of Record, the law firm of KEMP & KEMP, and for a cause of action does hereby state and allege as follows:

**I.    JURISDICTION AND VENUE**

1.  The Court has jurisdiction over this case pursuant to 28 U.S.C. §1332 which states in relevant part as follows:

> **(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
> **(1)** citizens of different States; . . .

1

2. The Court has jurisdiction because there is complete diversity of citizenship between Plaintiff William Soto, a citizen of the State of Idaho, and Defendants who, upon information and belief are all citizens of the state of Nevada. No Defendant is a resident of the state of Idaho.

3. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs in that Plaintiff is seeking numerous elements of damages including potential lost wages in the amount of $40,000.00. For violations of NRS §200.620 and §200.630. NRS § 200.690 provides for a private right of action for violations of NRS §200.620 and §200.630 including actual or liquidated damages, punitive damages, cost and reasonably attorney's fees. In addition, Plaintiff brings claims of Defamation Per Se and Slander Per Se and has suffered emotional distress damages in amounts to be determined at trial.

4. Venue is proper in the unofficial Southern Division of the Court in that the material events complained of herein took place in Clark County Nevada.

## II.   ALLEGATIONS COMMON TO ALL CLAIMS

5. WILLIAM SOTO (herein "Plaintiff"), is a resident of the State of Idaho. Plaintiff began his employment with Defendant Aria on or about December 7, 2009, as a security officer. Plaintiff was promoted to the position of Security Investigator II and, at the time of the precipitating event on Monday, February 23, 2015, was working in an undercover capacity on Defendant Aria's casino floor. Plaintiff was terminated on March 4, 2015.

6. ARIA RESORT & CASINO, LLC (herein "Defendant Aria"), is a domestic limited-liability company registered with the Nevada Secretary of State. Defendant Aria has continuous and ongoing business operations in the state of Nevada and Clark County, and engages in an industry affecting commerce. Defendant Aria, as a limited-liability company, can only operate by and through its agents, directors, officers, managers, supervisors, and

2

employees. Therefore, wherever the identifying word Defendant is used, it encompasses actions by and through its agents, directors, officers, managers, supervisors, and employees.

7.  Defendant MELANIE SALJOUGUI (herein "Defendant Saljougui") is, and/or was at the relevant times mentioned herein, an individual and a resident of Clark County Nevada. Defendant Saljougui was trespassed for solicitation from Defendant Aria's property by Plaintiff.

8.  Defendant YONG HOON LEE (herein "Defendant Lee"), is, and/or was at the relevant times mentioned herein, an individual and a resident of Clark County Nevada. This Defendant was in a supervisory or management position as an Assistant Shift Manager of Defendant Aria's Security Department at all relevant times complained of herein.

9.  Defendant JERALD HEDRICK (herein "Defendant Hedrick"), is, and/or was at the relevant times mentioned herein, an individual and a resident of Clark County Nevada. This Defendant was a supervisory or management position as Defendant Aria's Security Investigations Manager at all relevant times complained of herein.

10. Defendant ROBERT FISHBOURNE (herein "Defendant Fishbroune"), is, and/or was at the relevant times mentioned herein, an individual and a resident of Clark County Nevada. This Defendant was a security officer employed by Defendant Aria at all relevant times complained of herein.

11. Defendant TODD OWEN (herein "Defendant Owen"), is, and/or was at the relevant times mentioned herein, an individual and a resident of Clark County Nevada. This Defendant was in a supervisory or management position as Defendant Aria's Employee Relations Manager at all relevant times complained of herein.

3

12. Individual Defendants and each of them acting in concert with malicious intent to purposefully harm Plaintiff set forth knowingly false information and statements about Plaintiff and/or were reckless in the making of the false and defamatory statements about Plaintiff. These knowingly false and defamatory statements subjected Plaintiff to consequences including but not limited to Plaintiff being terminated as a direct results of the knowingly false information and comments. Plaintiff's termination caused by Defendants concert of actions interfered with Plaintiff's prospective business advantage. Further, Defendants concert of actions impeded Plaintiff's application for employment immediately after his termination and in Plaintiff's application process for a position with the United States Department of Homeland Security. Defendants further caused Plaintiff embarrassment and humiliation by accusing Plaintiff of criminal conduct of extortion and blackmail.

13. Defendant Aria is liable for the intentional acts and tortious conduct of its' individual Defendant employees, Lee, Hedrick, and Owen, because the malicious acts and tortious conduct were not independent ventures, were committed in the course of the very tasked assigned to the individual Defendants, Lee, Hedrick, and Owen, and it was reasonably foreseeable under the facts and circumstances that a person with ordinary intelligence and prudence could have anticipated that such conduct would result in injury to Plaintiff. Individual Defendants Lee, Hedrick, and Owen were managers of Defendant Aria such that the actions of the individuals constitute the acts of Defendant Aria. Furthermore, the individual Defendants, Lee, Hedrick, and Owen, acted with malice and ill will towards Plaintiff in disclosing information for which there was no reasonable grounds to believe was accurate and, thereby, recklessly and intentionally disclosing inaccurate and misleading information.

14. On **Monday, February 23, 2015**, at approximately **2:40 a.m.**, while working undercover in his position as a Security Investigator, Plaintiff was solicited by Defendant Saljougui. Defendant Saljougui offered Plaintiff a "private show plus a little extra in exchange for $2,000.00."

15. Following Defendant Aria's procedures, Plaintiff escorted Defendant Saljougui to Defendant Aria's Security Processing Room wherein she was processed and formally, and permanently, trespassed from the property pursuant to NRS § 207.200.

16. As required under Defendant Aria's policies and procedures, Plaintiff entered all information about the trespass of Defendant Saljougui into Defendant Aria's computer information system and generated the incident file herein incorporated by reference.

17. Defendant Saljougui signed the trespass acknowledgement, herein incorporated by reference, that she had "been admonished not to return to, or loiter the premise of any MGM MIRAGE Property (pursuant to NRS § 207.200)." Defendant Saljougui was then escorted off property by Plaintiff.

18. Defendant Saljougui's trespass was her first at an MGM Resorts International/Aria property. By way of background, as a matter of policy and procedure, when someone is trespassed off a MGM Resorts International/Aria property for the first time the incident is not reported to the Las Vegas Metropolitan Police Department. *Subsequent violations* of trespass are reported for prosecution.

19. In the **evening** of **Monday, February 23, 2015**, after being permanently trespassed off property less than 24 hours beforehand, Defendant Saljougui returned to property with a male companion and the two began drinking at the Alibi bar. This, and the following chain of events, are memorialized in an email report between Defendant Hedrick and Tamara

5

Lelyk (herein "Lelyk"), Director of Employee Relations for Defendant Aria. That email is dated **Wednesday, February 25, 2015**, and is herein incorporated by reference.

20. According to Defendant Hedrick's report, the male companion that Defendant Saljougui was allegedly with on the night of Monday, February 23, 2015, was upset and allegedly reported to Alibi Manager, Lance Martinez (herein "Martinez"), that Defendant Saljougui was allegedly receiving text messages from "someone" who "they believed" to be Plaintiff.

21. Martinez then allegedly contacted Assistant Shift Manager of Defendant Aria's security department, Defendant Lee, to report the text messages. Defendant Lee then allegedly made contact with Defendant Saljougui and her male companion. At the time of that contact, Defendant Saljougui allegedly produced to Defendant Lee *screen shots* of the text messages received and an audio recording of a conversation allegedly between Plaintiff and Defendant Saljougui. The phone conversation never occurred, but if any recording was "made," it was done so without Plaintiff's permission and in violation of Nevada's wiretapping statutes NRS § 200.620 and NRS § 200.630.

22. Defendant Lee allegedly checked the telephone number from which the text messages were allegedly received: that "check returned nothing." At no time, did any Defendant establish to whom the alleged phone number appearing on the telephone of prostitute Defendant Saljougui belonged.

23. On Tuesday, February 24, 2015, Defendants Hedrick and Lee again allegedly made contact Defendant Saljougui who recounted an even more utterly unbelievable story.

24. Defendant Saljougui allegedly reported to Defendants Lee and Hedrick that after being escorted to the back of the house to be trespassed from the property for solicitation, Plaintiff asked Defendant Saljougui what she was going to do for him. Defendant Saljougui allegedly stated that she would pay Plaintiff so she did not have to go to jail.

6

25. Defendant Saljougui then alleged that when Plaintiff escorted her off property she offered to pay him again, but that Plaintiff declined because there were too many cameras.

26. Defendant Saljougui then alleged that later in the day on Monday, February 23, 2015, Plaintiff called her so they could arrange a location to meet for the exchange of money. Defendant Saljougui allegedly stated they did not met. Thereafter, Plaintiff allegedly texted Defendant Saljougui while she was with her male companion at the Alibi bar which started the "investigation" by Defendants Lee and Hedrick.

27. While speaking with Defendants Lee and Hedrick, Defendant Saljougui allegedly, somehow, attempted to arrange to meet Plaintiff off property so that Defendants Lee and Hedrick could obtain additional evidence by conducting surveillance of that meeting.

28. Not surprisingly, because these events never occurred, there was no contact made between Plaintiff and Defendant Saljougui at the alleged designated "drop off" location. However, a text conversation, herein incorporated by reference, allegedly occurred between Plaintiff and Defendant Saljougui during the time of trying to connect at the "drop off" location.

29. In those alleged text messages, which have no time or date stamps and which are from the telephone number that was *never verified* by *any Defendant* as to who that number belonged, Defendant Saljougui texts, "Is 2000 ok to remove the tresspass [sic]? Or just 400 to not file?" There is *no response* from the person on the other side of the conversation.

30. Without confirmation of an amount, the conversation proceeds with the person on the other side texting, "Oh and put it in something like an envelope or something."  It appears Defendant Saljougui was supposed to guess at how much to put in the envelope. Further, the text messages have the person on the other side of the conversation stating he/she was in a white car. Plaintiff does not own a white car and does not have access to drive a white car.

7

31. Thereafter, according to the **Wednesday, February 25, 2015**, emailed report between between Defendant Hedrick and Lelyk, Defendant Hedrick stated he then contacted Defendant Fishbourne who had witnessed Plaintiff exchange contact information with Defendant Saljougui on **Monday, February 23, 2015**, and that <u>Defendant Fishbourne had provided a statement attached to the report</u>.

32. Defendant's Fishbourne statement, herein incorporated by reference, was sent to Defendant Hedrick on **Saturday, February 28, 2015**, with the subject line reading: "Inv. Fishbourne Statement."

33. Defendant Fishbourne's statement was provided three days *<u>after</u>* Defendant Hedrick's **Wednesday, February 25, 2015,** emailed report to Lelyk. Defendant Hedrick must have been psychic to be able to predict what Defendant Fishbourne was going to write in his statement three days later. Furthermore, in Defendant Fishbourne's statement he states that **Saturday, February 21, 2015**, was the date he saw Plaintiff talking to Defendant Saljougui – two days *<u>before</u>* Plaintiff would encounter Defendant Saljougui for the first time. Apparently Defendant Fishbourne is also psychic.

34. Upon questioning during Plaintiff's unemployment hearing, Defendant Fishbourne was asked how many statements he gave to Defendants about the incident. Defendant Fishbourne responded he provided only the one emailed statement dated **February 28, 2015**. Defendants Hendrick and Fishbourne both knew the information they provided about Plaintiff was false and would cause Plaintiff harm.

35. On the night of **Tuesday, February 24, 2015**, Defendants Hedrick and Lee interviewed Plaintiff about the alleged chain of events. During the interview Plaintiff stated "he only trespassed [Defendant Saljougui] and escorted her off property" and "he did not call or text

her." Defendant Hedrick goes on to say in his emailed report to Lelyk on Wednesday, February 25, 2015, regarding the interview with Plaintiff that

- He was NOT made aware that we had audio recording of his phone call
- He was NOT made aware that we had all the text messages.
- *He was NOT made aware that Investigator Fishbourne provided a statement regarding what he witness,*
- He was NOT made aware that we made contact with [Defendant Saljougui]

36. It is known there was no statement provided by Defendant Fishbourne until **four (4) days after** that Tuesday, February 24, 2015, meeting.

37. Thereafter, Defendant Owen, Defendant Aria's Employee Relations Manager, authored a "report," herein incorporated by reference, using the identical recitation of "facts" found in Defendant Hedrick's report *except* he removed the statement allegedly made by Defendant Fishbourne witnessing the exchange of information between Plaintiff and Defendant Saljougui on Saturday, February 21, 2015.

38. On March 3, 2015, Plaintiff attended a due process meeting with Defendants Hedrick and Owen. During that due process meeting, Plaintiff was not shown the alleged text messages, or allowed to listen to the alleged recording. Furthermore, Plaintiff was not asked to produce his phone to verify that such text messages did or did not exist. Again, no Defendant ever verified to whom the telephone number belonged.

39. Plaintiff was never shown the statement of Defendant Fishbourne most likely because Plaintiff would instantly have realized Defendant Fishbourne's statement to be a complete lie produced five (5) days **after** the fact, four (4) days **after** Defendants Hedrick and Lee interviewed Plaintiff, and three (3) days **after** Defendant Hendrick had allegedly included the Defendant Fishbourne's statement in his report to Lelyk.

40. In Defendant Owen's written report, herein incorporated by reference, Defendant Owen recites the "facts" as set forth in Defendant Hedrick's obviously fabricated report, and

9

  additionally accuses Plaintiff extortion. Defendant Owen conducted no independent investigation of the facts and instead adopted and rubberstamped the obviously false information provided by Defendant Hedrick.

41. Other third-party Aria employees including but not limited to Shane Williams, Angelina (last name unknown) and Craig (last name unknown), were informed by Defendants that Plaintiff was terminated because he was blackmailing and exhorting not only prostitute Defendant Saljougui, but that he was additionally blackmailing and exhorting other prostitutes who came onto Defendant's property. Defendants also relayed to the unprivileged third-parties that Plaintiff kept track of his blackmailing and exhorting activities in a little black book.

42. In a failed attempt to stop Plaintiff from obtaining unemployment benefits, Defendant Aria disclosed the illegal recording made by Defendant Saljougui to the State of Nevada Department of Employment, Training and Rehabilitation during a hearing. The disclosure of the illegal recording was made without privilege. In the alterative, Defendants conspired, working in concert, to manufacture the recording to support their malicious lies, defame Plaintiff, and interfere with Plaintiff's prospective business advantage by having him terminated.

43. Plaintiff was terminated on March 4, 2015, as a result of Defendants concert of actions in perpetrating knowingly false and defamatory statements.

…

…

…

…

…

## FIRST CAUSE OF ACTION:

## DEFAMATION PER SE
### (Against All Defendants)

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

44. On one or more occasions Defendants told one or more persons, orally and/or in writing, that the Plaintiff was extorting and blacking prostitutes.

45. The statements of and concerning the Plaintiff was made as statements of fact and not of mere opinion.

46. The statements of and concerning the Plaintiff were false and defamatory.

47. The false and defamatory statements were published to third parties and were not privileged.

48. Defendants published the false and defamatory statements knowing they were false or with reckless disregard for the truth and/or with actual malice or malice in fact.

49. The false and defamatory statements made by the Defendants were of a type that would tend to harm the Plaintiff in his trade, occupation, profession, business, or office.

50. The false and defamatory statements of and concerning Plaintiff imputed to Plaintiff the commission of one or more crimes including, but not limited to, NRS 205.320, Threats.

51. Plaintiff's reputation and character were harmed causing him actual pecuniary and special damages including, but not limited to lost income.

52. The false and defamatory statements of and concerning Plaintiff published by the Defendants constitute per se defamation.

53. Damages are presumed.

54. Plaintiff suffered emotional distress, mental anguish, and general damages.

55. Defendants conduct was accomplished with malice, fraud, or oppression such that punitive or exemplary damages should be awarded to deter similar future conduct by Defendants.

## SECOND CAUSE OF ACTION:

### SLANDER PER SE
### (Against Todd Owen)

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

56. Defendant Owen made one or more false and defamatory written communications of and concerning the Plaintiff including, but not limited to accusing Plaintiff of the criminal act of extortion found in his report. These were statements of fact and not mere opinions. Each publication and/or republication is a separate, distinct, and actionable tortious act.

57. The false and defamatory communications were published to one or more third parties.

58. Defendant Owen knew that the published communications were false, acted in reckless disregard as to the truth or falsity of the published communications and/or acted negligently with regard to each and every publication of defamatory matter.

59. The publication of each and every defamatory communication constituted SLANDER PER SE in that it falsely imputed the commission of a crime to Plaintiff.

60. The publication of each and every defamatory communication constituted SLANDER PER SE in that it would tend to injure the Plaintiff in his trade, occupation, business, profession, or office.

61. The communication was published with malice; the publication was unprivileged.

62. The defamatory communications have so damaged Plaintiff's reputation that he was unable to secure suitable subsequent employment resulting in lost wages in an amount to be proved at trial.

…

## THIRD CAUSE OF ACTION:

### CIVIL CONSPIRACY
**(Against Saljougui, Lee, Hedrick, Fishbourne, and Owen)**

All other Paragraphs of this complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

63. The Defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming Plaintiff.

64. Plaintiff sustained damage resulting from the Defendants' act or acts. Such damage included, but was not limited to lost wages, emotional distress, harm to his reputation and character, mental anguish, harm to his finances, attorney fees and costs in pursuing and protecting his legal rights and remedies.

## FOURTH CAUSE OF ACTION:

### CONCERT OF ACTION
**(Against Saljougui, Lee, Hedrick, Fishbourne, and Owen)**

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

65. Defendants acted together to commit a tort while acting in concernt or in pursuit of a common design.

66. Plaintiff was damaged as a direct and proximate result of the Defendants acts as further alleged and set forth herein.

…

…

…

### FIFTH CAUSE OF ACTION:

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
**(Against Defendants Saljougui, Lee, Hedrick, Fishbourne, and Owen)**

All other Paragraphs of this Complaint are expressly incorporated here by reference as if fully reasserted, alleged, and set forth herein.

67. A prospective contractual relationship existed between the Plaintiff and a third party.

68. Individual Defendants, and each of them, knew of this prospective relationship.

69. Individual Defendants intended to harm the Plaintiff by preventing the relationship.

70. Individual Defendants had no privilege or justification.

71. Individual Defendants' conduct resulted in actual harm to the Plaintiff as set forth in detail herein.

### SIXTH CAUSE OF ACTION:

### VIOLATION OF NRS § 200.620
**(Against Defendant Saljougui)**

72. Defendant Saljougui did or attempted to intercept a wire communication of Plaintiff.

73. Defendant Saljougui did not obtain authorization from Plaintiff to intercept any wire communication.

74. Defendant Saljougui intended to harm the Plaintiff.

75. Defendant Saljougui had no privilege or justification.

76. Defendant Saljougui's conduct resulted in actual harm to the Plaintiff as set forth in detail herein.

77. Under NRS § 200.690, Plaintiff is entitled to actual or liquidated damages, punitive damages, cost and reasonably attorney's fees.

...

## SEVENTH CAUSE OF ACTION:

**VIOLATION OF NRS § 200.630**
**(Against All Defendants)**

78. Defendants disclosed the existence, content, and substance of an illegal wire communication made without Plaintiff knowledge.

79. Plaintiff did not authorize Defendants to disclose the existence, content, and substance of any wire communication of his.

80. Defendants admit there was an audio recording made allegedly with Plaintiff as the recorded person.

81. Defendants admit Plaintiff did not know about the recording.

82. Defendants intended to harm the Plaintiff.

83. Defendants had no privilege or justification.

84. Defendant's conduct resulted in actual harm to the Plaintiff as set forth in detail herein.

85. Under NRS § 200.690, Plaintiff is entitled to actual or liquidated damages, punitive damages, cost and reasonably attorney's fees.

…

…

…

…

…

…

…

…

…

15

**WHEREFORE**, Plaintiff prays judgment against Defendants, and each of them, and requests relief as follows:

1. For actual and compensatory damages in excess of $75,000.00;
2. For general damages in excess of $75,000.00;
3. For Punitive and/or Exemplary damages in excess of $75,000.00;
4. All remedies provided for under Nevada state and federal statutes set forth herein;
5. For Attorney's fees;
6. For costs of suit;
7. For pre-judgment interest;
8. For a trial by jury of all issues that may be tried to a jury;
9. For such other and further relief as the court may deem just and equitable.

DATED this 12th day of January, 2016.

                    /s/ Victoria L. Neal
JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
VICTORIA L. NEAL, ESQ.
Nevada Bar No.: 13382
KEMP & KEMP
7435 W. Azure Drive, Suite 110
Las Vegas, Nevada 89130
Ph. (702) 258-1183 / Fax (702) 258-6983

*Attorneys for Plaintiff*

…

…

…